# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

AL-WAHID ALI,

    Plaintiff,

v.

UNIVERSITY CORRECTIONAL
HEALTH CARE,
RUTGERS, THE STATE UNIVERSITY, et al.,

    Defendants.

Civ. No. 17-1285 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff Al-Wahid Ali is a state prisoner currently incarcerated at South Woods State Prison ("SWSP") in Bridgeton, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. At this time, this Court must screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the complaint will be permitted to proceed in part.

## II.    BACKGROUND

The allegations of the complaint will be construed as true for purposes of this screening opinion. Mr. Ali names the following as defendants: (1) University Correctional Health Care Rutgers ("UCHC"); (2) Nurse Monica Tsakiris; (3) SWSP Administrator Willie Bonds; (4) Sergeant Watermasysk; (5) SCO E. Marin; (6) SCO Powers; (7) SCO Flowers; (8) Nurse David, last name unknown; (9) SWSP Social Worker Adams; (10) SCO Cortez; (11) the New Jersey

Department of Corrections ("DOC"); (12) Lieutenant Miranda, last name unknown; and (13) John & Jane Does 1-100 (collectively "defendants").

Mr. Ali's complaint arises from the medical treatment, or lack thereof, he has received while incarcerated at SWSP for his Hepatitis C and Lichen planus disease. Plaintiff underwent surgery to remove infected skin from his hands and feet during a previous period of incarceration in 2008. He was prescribed steroids after the surgery and was provided a wheelchair due to swelling and pain in his feet. Mr. Ali states he is supposed to have his blood tested every 60 days, but the DOC is not doing the tests. He further states he is supposed to receive Remvella and Benadryl to prevent itching during dialysis but he is not being given those medications.

On December 7, 2016, Mr. Ali met with Tsakiris because his ear had started bleeding during dialysis. He advised her of his issues with his medications, but Tsakiris refused to refer Mr. Ali to a physician or provide him the prescribed medication. Mr. Ali saw Tsakiris again on December 20, 2016 and requested new medication, Elbasvir, for his hepatitis. Tsakiris became hostile, refused Mr. Ali medical treatment, and summoned corrections officers to escort Mr. Ali out of her office.

A doctor from St. Francis Medical Center recommended that Mr. Ali have surgery on his left arm to remove lumps caused by dialysis. An unidentified person denied that request. Plaintiff asserts he is supposed to be sent to a dialysis center every four to six months for cleanings that would prevent the lumps, but he has not been getting these treatments. He states his medication is not being administered correctly, causing sores all over his body.

On January 5, 2017, Mr. Ali wrote a grievance on a kiosk regarding a pair of medical boots. Tsakiris saw him entering the grievance and told Mr. Ali she would not order the boots.

Mr. Ali states he was moved from a two-man cell to a four-man cell because he was in a wheelchair, but other inmates with wheelchairs were permitted to remain in two-man cells. He states he has pain in his neck and back because the upper bunks are higher in four-man cells than they are in two-man cells, but SCO Cortez refused to permit Mr. Ali to return to a two-man cell.

Mr. Ali was scheduled to receive a MRI at Saint Francis on August 25, 2016, but the transporting officers were not aware that he would be in a wheelchair. He ended up missing his appointment because the vehicle could not accommodate the wheelchair. Tsakiris did not reschedule the appointment. As she was transporting Mr. Ali back to SWSP, she "flipped" him out of the wheelchair and told him to get his "'crippled ass off the floor and walk!'" Officer Powers then handcuffed Mr. Ali and threw him against a bale of hay. SCO Flowers hit Mr. Ali in the head with a closed fist at least four times.

Mr. Ali had dialysis scheduled for the next day and requested his wheelchair. SCO Marin denied the request, and Mr. Ali began crawling to his appointment. Sgt. Watermasysk told Mr. Ali he could not crawl across the compound, but denied Mr. Ali's request for his wheelchair. He then ordered officers to throw Mr. Ali back in his cell; Mr. Ali missed his dialysis appointment. Later that night, Mr. Ali fell from his bunk. A medical emergency code was called, and Mr. Ali was taken to the Extended Care Unit for constant observation.

On August 31, 2016, Mr. Ali saw Nurse Karen for his swollen feet. Plaintiff was charged $10. He saw Nurse Karen again on September 5, 2016, and was refused treatment. Mr. Ali saw Jennifer Farested for his feet and hemorrhoids. Farested indicated she would order suppositories for Mr. Ali, but no order was ever placed and Mr. Ali never saw a doctor.

Mr. Ali was denied his blood pressure medication on September 30, 2016. Mr. Ali indicates $5 was taken out of his account on December 26, 2016 and January 9, 2017 for doctor visits that he never had.

He saw Tsakiris on January 19, 2017 and requested that she refer him for a MRI, provide him medical boots, and give him Elbasvir and Grazoprevir for his hepatitis. She denied all of his requests.

Mr. Ali also states SWSP social worker Ms. Adams has refused to allow him to call his sons.

He alleges defendants are discriminating against him due to his race.

Mr. Ali requests monetary relief and injunctive relief in the form of proper medical treatment. He also requests the reinstatement of his commutation time and correcting of his "max out" date. He also requests the appointment of pro bono counsel.

### III. LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *see* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### IV. DISCUSSION

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

5

> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

**A. New Jersey Department of Corrections**

Mr. Ali's claims against the DOC, an agency of the State of New Jersey, are barred by the Eleventh Amendment, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Plaintiff may not bring a suit against the State or one of its agencies in federal court unless Congress has expressly abrogated New Jersey's sovereign immunity or the State consents to being sued in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). As neither of these conditions are met here, the claims against the DOC are dismissed with prejudice.

**B. Breach of Contract**

Mr. Ali alleges Defendants collectively breached the contract Rutgers UCHC had with the State of New Jersey to provide medical care to inmates. He states Defendants are liable to him as a third-party beneficiary. Other courts in this district have held that prisoners have no standing to sue for any alleged breach of contract between the State and its medical care

providers; the only party with standing to sue for a breach of contract would be the State itself. *See, e.g., Garcia v. Corr. Med. Serv.*, No. 13-1250, 2014 WL 346625, at \*6 (D.N.J. Jan. 30, 2014) ; *Maqbool v. Univeristy Hosp. of Medicine & Dentistry of New Jersey*, No. 11-4592, 2012 WL 2374689, at \*4 (D.N.J. June 13, 2012); *Green v. Corzine*, No. 09-1600, 2011 WL 735745, at \*4 (D.N.J. Feb. 22, 2011). The Court is persuaded by those prior decisions and will dismiss the breach of contract claims in their entireties for failure to state a claim.

## C. Eighth Amendment

The bulk of Mr. Ali's complaint is that prison officials are denying him proper medical care for his hepatitis and accompanying afflictions in violation of the Eighth Amendment.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of

7

permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))). The Court finds for purposes of this screening opinion only that Hepatitis C is a serious medical need.

This Court will permit Mr. Ali's deliberate indifference claims against Tsakiris to proceed. It is plausible that Mr. Ali's allegations against Tsakiris rise to the level of deliberate indifference such as intentionally preventing Mr. Ali from getting medical care or delaying medical treatment for a non-medical reason. The Court will exercise supplemental jurisdiction over state law medical malpractice claims against her as well.

The denial of medical care claim may also proceed against Sgt. Watermasysk and SCO Marin based on Plaintiff's allegations that they denied him a wheelchair to go to a dialysis appointment. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017).

The denial of medical care claim is dismissed without prejudice as to defendants David, Cortez, Adams, Flowers, Miranda, and Powers. State actors may be liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995); *Jackson v. Camden Cnty. Corr. Facility,* No. 12–7538, 2013 WL 1844636, at *3 n.1 (D.N.J. Apr. 29, 2013). Here, Mr. Ali's sets forth no facts rising to the level of a constitutional violation for these defendants.

The only allegation against Nurse David is that he gave Mr. Ali Benadryl at medication call-out instead of in the morning. "'[M]ere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,'. . . ." *Pearson*, 850 F.3d at 535. Mr. Ali's opinion that he should receive his medication at a different time of day does not implicate the Eighth Amendment. Likewise, Mr. Ali's assertion that SCO Cortez would not permit him to return to a two-man cell does not constitute deliberate indifference because there is no indication that being in a two-person cell was medically necessary. The complaint does not contain factual allegations against the other four defendants regarding the denial of medical care; therefore, the claim is dismissed without prejudice against them.

In order to state a claim for denial of medical care against Bonds and Rutgers UCHC as policymakers,[1] Plaintiff would have to provide facts suggesting they 1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm;" or 2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quotations and citations omitted). To state a claim on a failure to supervise basis, Mr. Ali "must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice

---

[1] "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

or procedure. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Mr. Ali has not identified any policy or practice Rutgers UCHC or Bonds failed to employ that directly caused his injury.

The Court declines to exercise supplemental jurisdiction over state law claims against the defendants against whom Plaintiff's federal claims are being dismissed. *See T.R. v. Cnty. of Delaware,* No. 13–2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over plaintiff's state law claims against one defendant when there are no viable federal claims against that defendant despite the fact that plaintiff may have pled plausible claims against another defendant); *see also Nadal v. Christie,* No. 12–5447, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

The Court will also permit claims to proceed against Tsakiris, Flowers, and Powers based on excessive use of force. The Eighth Amendment protects inmates from the "unnecessary and wanton infliction of pain[.]" *Whitley v. Albers*, 475 U.S. 312, 320 (1986). "In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 502 U.S. 1, 7 (1992)). Construing the complaint liberally and giving Mr. Ali the benefit of all reasonable inferences, there are sufficient facts in the complaint to infer that those three defendants wantonly inflicted pain against him by "flipping" him out of his wheelchair, throwing him, and hitting him in the head.

**D. Racial Discrimination**

Mr. Ali alleges Defendants, all of whom are allegedly Caucasian, denied him medical care on the basis of his race. "The Equal Protection Clause of the Fourteenth Amendment

commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.*

Mr. Ali has not sufficiently pled an Equal Protection violation. Although he alleges he is a member of a protected racial class, he does not allege similarly situated inmates who are not racial minorities were provided with the medical care that was denied to Mr. Ali. This claim shall be dismissed without prejudice.

**F. Remaining Claims**

Mr. Ali's claims based on the Religious Land Use and Institutionalized Persons Act of 2000, ("RLUIPA"), the First Amendment, and the Due Process clause are dismissed as improperly joined in this action.

Rule 18 states in relevant part that "[a] party asserting a claim . . . may join as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20 permits joinder of defendants "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). Mr. Ali has sufficiently pled Eighth Amendment claims against Tsakiris, Marin, and Watermasysk for denial of medical care and against Tsakiris, Flowers, and Powers for excessive force. There are no facts in the complaint that suggest these defendants were involved in allegedly denying Mr. Ali his rights

under the First Amendment, Due Process Clause, or RLUIPA. Additionally, the First Amendment, RLUIPA, and Due Process challenges arise out of a separate set of facts than the Eighth Amendment claims. Because there are no common defendants or questions of law or fact between the Eighth Amendment claims and the remainder of Mr. Ali's claims, joinder of those claims and defendants is improper under Rules 18 and 20.[2] The claims are dismissed. Mr. Ali must file a separate civil action with the filing fee or *in forma pauperis* application if he wishes to pursue those claims.

### V. MOTION TO APPOINT COUNSEL

Mr. Ali is pursuing this case *in forma pauperis*. Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). As a threshold matter, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Furthermore, in determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors). Additionally, the power to grant appointment of counsel lies solely with the discretion of this Court. *See id.*

---

[2] The Court further notes that claims that Mr. Ali's sentence was miscalculated or that commutation time was improperly taken away must be brought in a habeas action under 28 U.S.C. § 2254 after he has exhausted state court remedies because those claims concern the length of his sentence. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

Appointing counsel may be made at any point during the litigation *sua sponte* or by granting a party's motion. *See id.* at 156.

Initially, the Court notes that there may be some merit to Mr. Ali's claims. For example, as described above, several of his claims against various defendants have made it past this Court's screening. Thus, the *Tabron* factors will be analyzed.

The first *Tabron* factor requires this Court to analyze the circumstances of the individual plaintiff. *See* 6 F.3d at 156. "Courts generally should consider the plaintiff's education, literacy, prior work experience, and prior litigation experience. An indigent plaintiff's ability to present his or her case may also depend on factors such as the plaintiff's ability to understand English or, if the plaintiff is a prisoner, the restraints placed upon him or her by confinement." *See id.* (citations omitted). Plaintiff states he is illiterate and only has access to the law library once a week. The complaint is coherent and states sufficient facts to withstand summary dismissal, indicating someone is already assisting Plaintiff in preparing his submissions to the Court. Accordingly, this factor does not weigh in favor of appointing counsel.

The second *Tabron* factor requires this Court to examine the complexity of the legal issues in the case. *See* 6 F.3d at 156. "[W]here the law is not clear, it will often serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Id.* In this case, plaintiff is raising Eighth Amendment deliberate indifference claims arising from the medical care he received. The underlying law for asserting an Eighth Amendment deliberate indifference to a serious medical needs claim is clear. *See Montgomery v. Pinchak*, 294 F.3d 492, 502 (3d Cir. 2002) (citation omitted). Nevertheless, "[s]implicity in the allegation does not translate into simplicity in the presentation of the claim." *Id.* Thus, "[w]hile the ultimate issue

may be comprehensible, courts must still look to the proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459.

Mr. Ali is attempting to raise claims associated with the medical care he has received (or lack thereof) at SWSP for Hepatitis C. Based on the potential for complex medical issues associated with this case, this Court finds that Mr. Ali's case presents issues of sufficient complexity so as to warrant the appointment of counsel. *See Colston v. Corr. Med. Servs.*, 256 F. App'x 551, 553 (3d Cir. 2007) ("[C]ivil rights cases alleging deliberate indifference to a prisoner's medical needs can raise sufficiently complex legal issues to require appointment of counsel.") (citing *Montgomery*, 294 F.3d at 502 (citing *Parham*, 126 F.3d at 459)). Thus, the second *Tabron* factor weighs in favor of appointing counsel.

The third *Tabron* factor asks this Court to examine the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation. *See Tabron*, 6 F.3d at 156. "[W]here claims are likely to require extensive discovery and compliance with discovery rules, appointment of counsel may be warranted." *Id.* (citing *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992)). Documents and medical records from different sources may be needed to be produced and examined in this case. Given the nature of Mr. Ali's deliberate indifference arguments, the Court finds that the third *Tabron* factor supports appointment of counsel. *See Parham*, 126 F.3d at 460 (deliberate indifference to medical needs claims "involve[] complex facts and medical records that even most lawyers struggle to comprehend").

The fourth *Tabron* factor requires the Court to analyze whether the case will turn on credibility determinations and whether the case is "solely a swearing contest." *Parham*, 126 F.3d at 460. In this case, this Court presumes that the medical records could provide the relevant

evidence with respect to the claims. Therefore, at this time, the Court finds that the fourth *Tabron* factors does not necessarily weigh in favor of appointing counsel.

This Court also needs to consider whether the case will require expert testimony under the fifth *Tabron* factor. Expert testimony in this case may ultimately be necessary. *See, e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017). Thus, this factor weighs in favor of appointing counsel.

Finally, the sixth *Tabron* factors requires this Court to analyze whether plaintiff is able to retain and afford counsel. *See* 6 F.3d at 156. Plaintiff is proceeding *in forma pauperis* in this case and there is no indication that plaintiff is able to retain and afford counsel. Consequently, this factor weighs in favor of appointing counsel.

On balance, and having considered the *Tabron* factors, the Court finds that the appointment of counsel is warranted.

## VI. CONCLUSION

For the foregoing reasons, Mr. Ali's complaint shall be permitted to proceed against defendants Tsakiris, Marin, Watermasysk, Flowers, and Powers on the Eighth Amendment claims and state medical malpractice claims outlined in this Opinion. The claims against the New Jersey Department of Corrections are dismissed with prejudice as barred by the Eleventh Amendment. Mr. Ali's federal claims against defendants Rutgers UCHC, Bonds, David, Adams, Cortez, and Miranda are dismissed without prejudice for failure to state a claim upon which relief may be granted. The breach of contract and racial discrimination claims are dismissed for failure to state a claim. The First Amendment, RLUIPA, and Due Process claims are dismissed as improperly joined. This Court declines to exercise supplemental jurisdiction over Mr. Ali's

state law claims against Rutgers UCHC. The motion for the appointment of pro bono counsel is granted.

An appropriate order follows.

DATED: <u>August 28</u>, 2017                      <u>s/Robert B. Kugler</u>
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge